IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Big Red Management Corp., on behalf of | ) | |
| Itself and all others similarly situated, | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| Zurich American Insurance Company | ) | |
| Defendant | ) | JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

## INTRODUCTION

1.     Plaintiff in this action contends that it and others similarly situated have suffered business losses for which coverage is afforded under its Property Portfolio Protection, General Liability Coverage and Business Automobile ("Business Protection Policies")(Policy No. CPO 0171641-05, Effective: 7/1/2019 to 7/1/2020) and other substantially similar Business Protection Policies issued by Defendant Zurich American Insurance Company in connection the current coronavirus pandemic ("the Pandemic") and the civil actions taken by governmental authorities in efforts to quell the Pandemic.

## PARTIES

2.     Plaintiff is Big Red Management Corp., a Pennsylvania corporation with headquarters in Haverford, Pennsylvania. Plaintiff purchased policy CPO-0171641-05, effective July 1, 2019 to July 1, 2020.  This was a renewal from policy CPO-0171641-04. Plaintiff purchased PROPERTY PORTFOLIO PROTECTION, GENERAL LIABILITY COVERAGE, and BUSINESS AUTOMOBILE issued by ZURICH AMERICAN INSURANCE COMPANY, paying a total premium in excess of $300,000.00.   The coverage was provided for:

BIG RED MANAGEMENT CORP., ET AL
SCC RESTAURANT LLC. T/A THE MOSHULU
TALL SHIP PHILADELPHIA, LLP (OWNER OF HULL)
OUTRIGGER, LLC. T/A THE PLANTATION (LEL, LLC)
DADDY O RESTAURANT, LLC.
BIG RED MANAGEMENT CORP.
WHITE DOG ENTERPRISES, INC. T/A WHITE DOG CAFE
LUCKY DOG ENTERPRISES, LLC DBA WHITE DOG CAFE
TUCKERS REAL ESTATE, LLC TUCKER RESTAURANT, LLC
DADDY O REAL ESTATE, LLC
TUCKERS MANAGEMENT LLC
GINGER HAVERFORD LLC T/A WHITE DOG HAVERFORD
MSG WAYNE, LLC T/A AUTOGRAPH
LOUIE-LOUIE RESTAURANT, LLC
LUCKY'S REAL ESTATE, LLC
FEARLESS RESTAURANTS
WD BAKERY LLC
WDC GLEN MILLS, LLC
ROSEMARY RESTAURANT, LLC T/A ROSALIE

3.      Defendant is Zurich American Insurance Company, with its main offices in Schaumberg, Illinois. Zurich American Insurance, a subsidiary of Swiss insurance giant Zurich Insurance Group. The company, which represents its parent's North America Commercial unit, is a leading provider of commercial property/casualty insurance in the US and Canada. It offers a range of insurance coverage for businesses of all sizes, ranging from midsized businesses to global conglomerates.

4.      On Zurich North America's website it touts the following:

Our purpose starts with protecting what you've worked hard for, so that you have the confidence to pursue opportunities that help you reach your full potential. Our people take an expansive view of this shared purpose. We carry it out not just with the businesses we insure but also in the communities where we live and work.

Commercial property insurance protects your financial interest in your building, equipment, stock and other assets, the very things that enable you to deliver the products or services to your customers that generate business income and provide jobs. That's why this coverage can be one of the most important business insurance products your enterprise can purchase. Commercial property insurance policies can also include vital business interruption coverage features that will help you

maintain your business income stream should a loss temporarily halt your operations.

## JURISDICTION

5.    This Court has jurisdiction over the parties to this action. The named Plaintiff is a citizen of Pennsylvania, and thousands of Class Members are Pennsylvania residents. Defendant transacts business in Pennsylvania, has purposely availed itself of the privilege of conducting business in Pennsylvania, and currently maintains systematic and continuous business contacts with the Commonwealth of Pennsylvania.

6.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendant maintains substantial operations in this District; thousands of Class Members either reside or did business with Defendant in this District; Defendant engaged in business in this District; a substantial part of the events or omissions giving rise to the claims at issue occurred in this District; and because Defendant entered into transactions and received substantial profits from policyholders who reside in this District.

## FACTUAL BACKGROUND

7.    The Business Protection Policies are form policies containing similar standardized language which has been submitted to the Insurance Services Offices, Inc. ("ISO") and which contains copyrighted materials from ISO. ISO is an organization that collects statistical data, promulgates rating information, develops standard policy forms, and files information with state regulators on behalf of insurance companies that purchase its services.

8.    The Business Protection Policies provides a Business Income Coverage Form, Section B lists Additional Coverage," the first being for "1. Civil Authority," stating:

> We will pay for the actual loss of "business income" you sustain for up to the number of days shown on the Declarations for Civil Authority resulting from the necessary "suspension," or delay in the start, of your "operations" if the "suspension" or delay is caused by the order of civil authority that prohibits access

to the "premises" or "reported unscheduled premises". That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the "premises" or "reported unscheduled premises" which sustains a "business income" loss. The loss or damage must be directly caused by a "covered cause of loss."

9.       The Business Protection Policies provides an Extra Expense Coverage Form,

Section B lists Additional Coverage," the first being for "1. Civil Authority," stating:

We will pay for the actual and necessary "extra expense" you incur for up to the number of days shown on the Declarations for Civil Authority when an order of civil authority that prohibits access to the "premises" or "reported unscheduled premises". That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the "premises" or "reported unscheduled premises" where the "extra expense" was incurred. The loss or damage must be directly caused by a "covered cause of loss."

10.       The term Civil Authority is not defined in the Policy.

11.       #  The terms "Business Income" and "Extra Expense" are hereinafter collectively

referred to as a "Covered Loss."

12.       #  While the Policy was in force, Plaintiff and the Additional Insureds have

sustained and continue to sustain, a Covered Loss due to civil authority orders described below.

**ACTS OF CIVIL AUTHORITY**

13.       On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of

Disaster Emergency, the first formal recognition of an emergency situation in the Commonwealth

as a result of COVID-19.

14.       On March 8, 2020, Montgomery County's Commissioners issued a Declaration

of Disaster Emergency.

15.       On March 13, 2020, Governor Wolf announced the close of all Pennsylvania K-

12 schools for a period of 10 days.

16.       On March 14, 2020, the Pennsylvania Department of Community and Economic

Development in consultation with the Department of Health issued guidance to supplement Governor Wolf's urging non-essential businesses in Bucks, Chester, Delaware and Montgomery counties to close during their county-specific mitgation periods.  Restaurants were advised to stay open for carry-out and delivery only.

17.    On March 16, the City of Philadelphia announced the closure of non-essential businesses, including restaurants like the Plaintiffs.

18.    On March 19, 2020, Governor Wolf, and Pennsylvania's Secretary of the Department of Health issued Orders requiring all non-life-sustaining businesses in Pennsylvania to close their physical locations as of 8 pm on March 19.

19.    On March 22, 2020, Philadelphia Mayor Jim Kenney issued an Emergency Order Temporarily Prohibiting Operation of Non-Essential Businesses and Congregation of Persons to Prevent the Spread of 2019 Novel Coronavirus, ordering the closure of all businesses except those previously listed by the Governor of Pennsylvania as Life-Sustaining Businesses, noting that:

> COVID-19 may remain viable for hours to days on surfaces made from a variety of materials located in business and other places, thus contaminating certain property and places.

20.    On March 23, 2020, Governor Wolf and the Secretary of the Pennsylvania Department of Health issued a Stay-at-Home Order for residents of Philadelphia, Allegheny, Bucks, Chester, Delaware, Monroe, and Montgomery Counties, commencing 8 pm on March 23, 2020.

21.    On Monday, March 30, Governor Wolf announced that all Pennsylvania schools would remain closed indefinitely as coronavirus continues to spread in the state.

22.    On April 1, 2020, Governor Wolf extended the March 23, 2020 Stay at Home Order to the entire Commonwealth of Pennsylvania.  See Exhibit 6.

23.    On April 9, 2020, Governor Wolf announced that all schools will remain closed

for the remainder of the 2019-20 academic year.

24.     On April 20, 2020, Governor Wolf announced steps to begin limited operations, such as the restart of statewide construction projects while also extending the stay at home to May 8, 2020.

25.     As a consequence of the Pandemic (including specifically damage to property caused by the coronavirus), and the various Orders issued in the Commonwealth, Plaintiff and the Additional Insureds have suffered Covered Losses under the Policy.

26.     Defendants have, however, wrongfully repudiated coverage under the Policy for such Covered Losses suffered by Plaintiff and the Additional Insureds.

27.     Moreover, Pennsylvania is not the only state in which such orders have been issues, hereinafter referred to collectively as the "Closure Orders."   With respect to other states, as reported by CNN on April 7, 2020, https://www.cnn.com/2020/03/23/us/coronavirus-which-states-stay-at-home-order-trnd/index.html:

**Alabama**
On April 3, Governor Kay Ivey issued an order, effective for the next day at 5 p.m. which stated: "Every person is ordered to stay at his or her place of residence except as necessary to perform any of# the following 'essential activities.'" In the list of exempted activities -- religious services, for example -- the state health officer wrote no more than 10 people can gather.

**Alaska**
Alaska ordered its residents to stay at home unless absolutely necessary, starting March 28. Limited outdoor activities are allowed as long as social distancing of 6 feet is maintained.
People also are ordered to avoid travel between communities, Alaska Department of Health and Social Services Commissioner Adam Crum said. As of the time of this Complaint's filing, Alaskan authorities have lifted some but not all Pandemic related restrictions.  With respect to restaurants, they are permitted to open up for dine-in service, but with reservations, and are limited to up to 25% capacity.

**Arizona**
Governor Doug Ducey has ordered residents to stay at home unless they have to be out for essential business. The order went into effect at 5 p.m. on March 31.  Ducey encouraged people to continue to engage in outdoor activities using social distancing. He also said it's important that people stay

in touch with one another. The new order comes on the same day that state officials ordered all schools to remain closed for the remainder of the academic year.

## California

On March 19, Governor Gavin Newsom became the first governor to set mandatory stay-at-home restrictions to help combat the coronavirus. Since the order went into effect, all nonessential services such as dine-in restaurants, bars, gyms and convention centers have been shut down. Essential services, such as grocery stores, pharmacies, gas stations, food banks, convenience stores and delivery restaurants, have remained open. So have banks, local government offices that provide services and law enforcement agencies. Newsom urged all Californians to stay at home. Residents who need to leave home to take part in essential activities were advised to practice social distancing.

## Colorado

Governor Jared Polis declared a stay-at-home order, beginning March 26 and extending through at least April 26. Coloradans must stay at home unless they need to leave for necessary business, according to Polis. While critical businesses are exempt from the order, they must comply with social distancing requirements. Simple guidance wasn't enough, Polis said. "Now is the time to stay home." Even after Colorado's state wide Order expires, local municipalities may independently decide what they wish to do.  For example, the City of Denver's stay at home order does not expire until April 30 at the earliest.

## Connecticut

Connecticut's "Stay safe, stay at home" policy went effect March 23 at 8 p.m. Under Governor Ned Lamont's executive order, all nonessential businesses and nonprofit entities were told to close. The order excludes any essential business or entity providing essential services such as health care, food service, law enforcement and similar critical services, according to a news release. Nonessential public gatherings of any size should be canceled, and if residents must leave their home, they should not travel in groups and should keep at least 6 feet away from each other when possible, the governor advised.

## Delaware

Governor John Carney issued a statewide stay-at-home order that went into effect March 24 and will remain until May 15 or until the "public health threat is eliminated." The order advises residents to stay at home whenever possible and close all nonessential businesses, according to a news release. Governor Carney explained that Delaware residents may leave their home for essential activities, such as getting groceries, seeing a doctor and engaging in "other activities essential to their health, and the health and well-being of their family members, including pets," Carney said. Governor Carney further stated: "Delawareans may also engage in outdoor activity, but must adhere to social distancing guidelines.,"

## District of Columbia

Mayor Muriel Bowser has issued a stay-at home order that directs residents to stay at home except for essential activities, such as grocery shopping or obtaining medical care. "Any individual who willfully violates the order may be guilty of a misdemeanor and, upon conviction, subject to a fine

not exceeding $5,000, imprisonment for not more than 90 days, or both," Mayor Bowser said in a tweet.

**Florida**
Governor Ron DeSantis issued a "Safer at Home" order that goes into effect April 3. It limits movement outside homes to providing or getting essential services or carrying out essential activities. That also applies to interaction with other people outside of residents' homes. The order is in effect until April 30. Religious services conducted in churches, synagogues and houses of worship are counted as "essential business" and are exempt from the order.
Governor DeSantis also issued an executive order mandating a 14-day self-quarantine or isolation period for travelers arriving from areas experiencing substantial community spread of coronavirus.

**Georgia**
Georgia Governor Brian Kemp announced a statewide shelter-in-place order commencing on April 3 and runs until April 30. While he also recently announce plans for the limited reopening, Georgia's public schools will be closed for the remainder of the school year. The mayor of Atlanta, the state's largest city, issued a 14-day stay-at-home order on March 23.

**Hawaii**
Governor David Ige issued a "stay at home" order for Hawaii residents. The order took effect March 25 and will last through at least April 30, and on April 21 Governor Ige advised that he expected the order would be extended past April 30. When he issued the Order, Governor Ige explained: "These actions are extreme, but necessary, to flatten the curve and lay the groundwork for our recovery."
Exceptions to the order are being made for essential services, medical care and grocery shopping.

**Idaho**
Governor Brad Little issued a stay-at-home order on March 25 that went into effect immediately and presently is in effect until at least April 30. Idaho residents can still leave home to obtain essential services, but the order closes all nonessential businesses, and restaurants can provide only delivery or takeout options. Governor Little has also activated the Idaho National Guard to "assist civil authorities and local jurisdictions" with executing the state's coronavirus response. He did not specify any specific mission or role for the National Guard but did say in Wednesday's news conference that they are preparing to "stand up a joint task force, if requested."

**Illinois**
Governor J.B. Pritzker issued a stay-at-home order for the entire state, which went into effect March 21 and extends through at least April 30. Residents can go to grocery stores, pharmacies, medical offices, hospitals and gas stations. They can still go running or hiking and walk their dogs, according to the governor. As recently as the week Governor Pritzker has advised that changes to the Order are expected, and Chicago Mayor Lori Lightfoot has stated that she expects the Order to extend well into May 2020, and possibly into June. Governor Pritzker has since called on the White House to issue a nationwide stay-at-home order.

**Indiana.**

Governor Eric Holcomb issued an order that went into effect March 24 and is set to last through May 1.  Governor Holdcom advised that essential employees, including health care workers, grocery and transit workers, among others, can leave their home. Indiana residents can also leave their home to exercise. The Governor added that the Indiana National Guard is not assisting with enforcing the order, but it is assisting in the distribution of hospital supplies the state receives.

**Kansas**

Governor Laura Kelly issued a general stay-at-home order starting March 30 at 12:01 a.m.
The order allows for several exemptions, including traveling to essential work, and getting food, medicine and medical care, and other household necessities. Outdoor activity is allowed, provided people maintain a distance of 6 feet from one another, and gatherings are limited to 10 people.
The measure initially was scheduled to be in place until at least April 19. It has since been extended to May 3. The Kansas Department of Health and Environment earlier ordered 14-day quarantines for Kansans who traveled to California, Florida, Illinois, New Jersey, New York and Washington, starting March 23.

**Kentucky**

Kentucky has issued a "Healthy at Home" order encouraging residents starting March 26 to stay at home and directing only life-sustaining businesses to remain open starting. The order has no set end date at this time. Governor Andy Beshear issued an executive order on March 29 banning Kentuckians' travel to other states, except for job-required and health care-related travel, need-based trips for those who live on the border, and in cases of court orders. Those who return to Kentucky from out of state must to quarantine for 14 days.

**Louisiana**

After announcing that Louisiana has the fastest growth rate of coronavirus cases in the world, Governor John Bel Edwards issued a stay-at-home order to help slow the coronavirus spread.
The order took effect March 23, and Governor Bel Edwards said he will extend it through April 30. On April 17 Governor Bel Edwards further advised that that the state is "not where we need to be" to reopen, but he expects to be closer by May 1. Although state buildings and other essential businesses such as grocery stores, pharmacies and doctors' offices will remain open, nonessential businesses were ordered to close. Restaurants remain open for drive-thru, delivery and takeout options only.

**Maine**

Maine Governor Janet Mills issued an order requiring people to stay at home, unless for an essential job or an essential personal reason. The order is to start on April 2 and initially was scheduled to last through April 30.

**Maryland**

Governor Larry Hogan announced a statewide stay-at-home order after Maryland reported 1,400 coronavirus cases. The order, which went into effect March 30 at 8 p.m., restricts residents from leaving their homes except to visit grocery stores and pharmacies, to seek medical attention or to exercise. Governor Hogan's order also limited gatherings to no more than 10 people. The order has

no set end date at this time, and Maryland schools are closed until at least May 15. Essential businesses, which are not specifically defined in the order, are permitted to remain open but must limit contact between customers and staff, according to the order. Theaters, malls, fitness centers, nursing homes and restaurants that can't deliver or provide take-out must close.

**Massachusetts**
Governor Charlie Baker issued an emergency order requiring all businesses and organizations that do not provide essential services to close their physical workplaces, but these businesses are encouraged to continue their operations remotely. The order, effective March 24 through May 4, limits gatherings to 10 people in confined spaces, but does not prohibit gatherings of more than 10 people in an outdoor space, such as a park or athletic field.

**Michigan**
Governor Gretchen Whitmer has ordered Michigan residents to stay at home unless they are critical workers. The order went into effect March 24 and presently expires on April 30.
The order bans gatherings, public and private, of any number of people. This restriction does not apply to single households where people may already live together. "This is an unprecedented crisis that requires all of us working together to protect our families and our communities," Governor Whitmer said in the news release. "If we all come together, get serious, and do our part by staying home, we can stay safe and save lives."

**Minnesota**
Governor Tim Walz ordered Minnesota's 5.6 million residents to shelter in place starting 11:59 p.m. on March 27 and is presently in effect until May 4. Minnesota residents can still leave their homes for groceries and exercise., Governor Walz stated that he hopes to "strike a proper balance" of "making sure our economy can function" while protecting the most vulnerable and slowing the rate of transmission.

**Mississippi**
Mississippi Governor Tate Reeves issued a shelter-in-place order effective April 3 at 5 p.m. and is presently in effect until April 27. Residents are to leave their homes only for "essential activities, such as caring for someone in the vulnerable population, getting food or necessary supplies, and working for an essential business," according to the order. Minnesota residents are ordered to keep a 6-foot distance from others and avoid groups of 10 or more. Nonessential gatherings of more than 10 people are not allowed.

**Missouri**
Missouri Governor Mike Parson issued a statewide "Stay Home Missouri" order on April 3, effective April 6 and is presently in effect until May 3. The order states that individuals living in Missouri must avoid leaving their homes or places of residence unless necessary. The order does not prohibit people from going out for "essential services," like grocery stores, gas stations, banks or outdoor recreation, as long as precautions are taken and social distancing requirements are met. Missouri residents were advised to avoid eating or drinking at restaurants or bars, but takeout and delivery are allowed.

**Montana**

Governor Steve Bullock has ordered all citizens to stay at home except for essential work and limited outdoor activities. The order went into effect March 28 and is presently set to expire on April 24. Upon issuing the order, Governor Bullock stated: "With 90 cases in our state today ... we have to do more to curtail the spread of this virus.". . .  "I'd rather be accused of overreacting than to have our health care system overwhelmed. In order to have a healthy economy, we need to have a healthy population."

**Nebraska**

On April 3, 2020, Governor Pete Ricketts issued a Directed Health Measure (DHM) Order, which followed previous regional DHM order, and covered all 93 Nebraska counties. The Order, inter alia, imposes an enforceable, 10-person limit on public gatherings, requires schools (public, private, and parochial) to operate without students through May 31, 2020, and requires restaurants and bars to close their dining areas and move to takeout, delivery, and/or curbside service only. The Order does not apply to retail or grocery stores where people are able to maintain six feet of distance from one another.

**Nevada**

Governor Steve Sisolak issued a "stay at home" directive, effective at midnight April 1 and presently in effect until April 30. The directive orders people to stay at home, with exceptions such as leaving for certain essential jobs or obtaining services from essential business, including grocery stores. The order extended previously announced closures -- of non-essential businesses, gaming operations and schools -- through at least April 30. Gatherings of 10 people or more are banned, the governor's office said.

**New Hampshire**

Governor Chris Sununu issued a stay-at-home order to go into effect on March 27 and lasting until May 4. Nonessential businesses, including all state beaches along the coast, were ordered to close by the end of the day March 27. The order advises residents to stay at home and leave only for essentials.

**New Jersey**

In New Jersey, a stay-at-home executive order issued by Governor Phil Murphy has been in effect since March 21. The order prohibits all gatherings, such as celebrations.  The order does not have a set end date. The executive order requires all retail businesses to close except for essential businesses, including pharmacies and medical marijuana dispensaries, grocery stores, gas stations, pet stores, laundromats, banks, liquor stores and mail and delivery stores. On April 7, Governor Murphy expanded the order to include all state and county parks and state forests.

**New Mexico**

Governor Michelle Lujan Grisham instituted a "statewide stay-at-home instruction" beginning March 24, and presently in effect until April 30.  In a Twitter message, Governor Grisham stated, "All New Mexicans are instructed to stay at home except for outings essential to health, safety, and welfare."  The Governor further declared that "all businesses except those deemed essential to public health, safety and well-being will be ordered closed." according to the series of tweets. "Our society must continue to operate -- but in an extremely limited way," she said.

**New York**

Governor Andrew Cuomo issued an executive order directing all workers in nonessential businesses to stay at home. This order presently is in effect until May 15. Under the executive order, civil fines and mandatory closures will be issued to businesses that fail to comply. Nonessential gatherings are restricted, and individuals are being asked to limit outdoor recreational activities to non-contact activities. For essential workers who must go out in public, Governor Cuomo encouraged social distancing. Grocery stores, food delivery service and public transportation are still operational. Governor Cuomo has been holding regular press conferences updating the public on the status of the pandemic's effect.

**North Carolina**

Governor Roy Cooper has issued a stay-at-home order for North Carolina that went into effect March 30 at 5 p.m. and is presently in effect until April 29. Residents may leave their home for essential activities, but if they need to go outside, they must maintain social distancing of at least 6 feet from other people, the order states. All nonessential businesses must close. The order limits gatherings to 10 people or less. In a Twitter message, Governor Cooper stated: "Being apart from family & friends is difficult." "But we have to act now in the safest, smartest way when we have the chance to save lives."

**Ohio**

On March 22, Governor Mike DeWine issued a statewide stay-at-home order, effective March 23 to remain in place until at least May 1. Essential businesses and restaurants for takeout will be allowed to stay open. The Governor encouraged Ohioans to maintain a distance of at least 6 feet from others if they need to go outside.

**Oklahoma**

Governor Kevin Stitt has issued a statewide "Safer at Home" order for adults over the age of 65 and other vulnerable residents, presently in effect until May 6. All nonessential businesses will remain closed during this time, including gyms, barbers, tattoo and massage parlors, he said.
"I don't make these decisions lightly but based on the data, we need to take action," Governor Stitt said.

**Oregon**

On March 23, Governor Kate Brown issued an executive order telling Oregon residents to stay home except for essential needs. The order, became effective immediately,and does not have a set end date. The order prohibits all nonessential social and recreational gatherings, regardless of size. The order closes retail businesses in which close personal contact is difficult to avoid, such as barber shops, arcades, gyms and theaters. Businesses that are not closed by the order must implement social distancing policies in order to remain open. Failure to follow the new order can be punished as a misdemeanor. Governor Brown warned, "If businesses are not complying with this order, we will shut them down."

**Rhode Island**

Governor Gina Raimondo on March 28 issued a general stay-at-home order, presently in effect until May 8. In a Twitter message, Governor Raimondo wrote, "This means unless you're getting

food, medicine, gas or going to work, you need to stay home." Gatherings of more than five people are prohibited under this order. Also under the March 28 order, Rhode Island:
• Is closing all "non-critical retail businesses," starting March 30. The order specifies many types of businesses that can stay open. The allowed businesses include food stores, pharmacies, gas stations, auto repair stores, banks and firearms stores, to name just a few. Restaurants can operate for pickup and delivery. • Says any person traveling from any other state "for a non-work-related purpose" must immediately self-quarantine for 14 days, though health care and public safety workers are exempt. Rhode Island residents who must travel to another state for work can do so but must self-quarantine at home in Rhode Island while not working. A separate order provides that anyone entering Rhode Island from New York must self-quarantine for 14 days, citing the high number of coronavirus cases in New York. Law enforcement may pull over people with New York license plates to record their contact information and inform them of the self-quarantine order.

**South Carolina**
On April 6, Governor Henry McMaster announced a mandatory "home or work" order.
The order went into effect April 7 at 5 p.m. and is presently in place until April 27. Under the order, everyone in South Carolina should stay home unless they are working, visiting family, exercising outside at a safe distance or obtaining necessary goods or services. South Carolina was one of the last states in the nation to issue a stay-at-home order.

**Tennessee**
Governor Bill Lee announced April 2 he was issuing an order because data showed Tennesseans were moving around too much, and presently in effect until April 30. "Over the last few weeks, we have seen decreases in movement around the state as Tennesseans socially distance and stay at home," said the governor, who had previously been criticized for not issuing an order. "However, in recent days we have seen data indicating that movement may be increasing and we must get these numbers trending back down." Governor Lee said he updated a previous executive order to require that people only leave their homes for essential activities.

**Texas**
Governor Greg Abbott ordered all Texans to stay home beginning at 12:01 a.m. on April 2 through April 30. In a video he posed on Twitter on April w, Governor Abbot stated that residents must stay home unless providing essential services or doing "essential things like going to the grocery store." Governor Abbott also ordered 14-day quarantines for people flying to Texas from New York, New Jersey, Connecticut, Washington, California, Louisiana, Miami, Detroit, Chicago and Atlanta or motorists driving from Louisiana. Many of the state's counties previously had issued stay-at-home orders, including Dallas, Harris and Bexar.

**Virginia**
Governor Ralph Northam issued a stay-at-home order effective March 30 in which Virginia's residents must stay at home unless leaving to get food, supplies, going to work, seeking medical care or going outside to get exercise. The order is presently set to expire on June 10.

**Vermont**

Governor Phil Scott issued a "Stay Home, Stay Safe" order which directs all in-person operations and nonessential businesses to close beginning March 25, and presently in effect until at least May 15. Under the order, Vermonters should leave the house only for reasons that are critical to health and safety. Governor Scott stated, "I fully recognize the emotional, financial and economic impact of these decisions, but based on the best science we have available, these measures are necessary."

**Washington**

Governor Jay Inslee issued a "Stay Home, Stay Healthy" order March 23, requiring Washington residents to stay at home for the next two weeks. The order took effect immediately. Exceptions are made for critical jobs and grocery shopping. The order is presently in effect until May 4.
The order includes a ban on all gatherings and "the closure of many businesses." Governor Inslee said the only businesses that are allowed to stay in operation for the next two weeks are those that are "essential to the healthy functioning of our community or are able to let employees work remotely from home." Those essential positions include medical professionals and pharmacists.

**West Virginia**

Governor Jim Justice issued a stay-at-home order that went into effect on March 24. The order does not have a set end date. Governor Justice directed all West Virginia residents to only leave home for essential needs. Taking a walk, riding a bike and being out in nature for exercise is allowed, but people should stay at least 6 feet away from others. All nonessential businesses were directed to close, and restaurants were limited to takeout, delivery or drive-thru.

**Wisconsin**

Governor Tony Evers issued a "Safer at Home" order that prohibits all nonessential travel. The order went into effect March 25 and is presently in effect until at least May 26. The order allows Wisconsin residents to leave the house for essential tasks such as visiting the doctor, caring for family members in another household or getting groceries, but people should stay at home as much as possible. Essential businesses allowed to remain operating include banks, pharmacies, grocery stores and gas stations. Kindergarten through grade 12 schools are closed through the remainder of the year. "Issuing a Safer at Home order isn't something I thought we'd have to do and it's not something I take lightly, but here's the bottom line: folks need to start taking this seriously," Governor Evers said in a news release.

### DIRECT PHYSICAL LOSS AND DAMAGE TO PROPERTY

28.     State and local governmental authorities, and public health officials around the Country, acknowledge that COVID-19 and the Pandemic cause direct physical loss and damage to property.  For example:

    a.     The state of Colorado issued a Public Health Order indicating that "COVID-19... physically **contributes to property loss, contamination, and damage**..." (Emphasis added);6

b.  The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part "because the virus *physically is causing property loss and damage*." (Emphasis added);

c.  Broward County,  Florida issued an Emergency Order acknowledging that COVID-19 "*is physically causing property damage*." (Emphasis added);

d.  The State of Washington issued a stay at home Proclamation stating the "COVID-19 pandemic and its progression… remains a public disaster affecting life, health, [and] *property*…" (Emphasis added);

e.  The State of Indiana issued an Executive Order recognizing that COVID-19 has the "propensity to *physically* impact surfaces and personal *property*." (Emphasis added);

f.  The City of New Orleans issued an order stating "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for prolonged period of time, thereby spreading from surface to person and *causing property loss and damage* in certain circumstances." (Emphasis added);

g.  The State of New Mexico issued a Public Health Order acknowledging the "threat" COVID-19 "poses" to "*property*." (Emphasis added);

h.  North Carolina issued a statewide Executive Order in response to the Pandemic not only "to assure adequate protection for lives," but also to "assure adequate protection of… *property*." (Emphasis added); and

i.  The City of Los Angeles issued an Order in response to  COVID-19 "because, among other reasons, the COVID-19 virus can spread easily from person to person and it is *physically causing property loss or damage* due to its tendency to attach to surfaces for prolonged periods of time." (Emphasis added).

29.  Additionally, the Pennsylvania Supreme Court in *Friends of Danny Devito, et al v. Tom Wolf, Governor, et al,* determined that the pandemic should be included as a natural disaster as it involved "substantial damage to property, hardship, suffering or possible loss of life."

## CLASS ALLEGATIONS

30.  The civil orders issued by States essentially nationwide have caused other Policyowners to suffer Covered Losses for which Defendants have repudiated coverage under the standardized Policy terms.

31.    Accordingly, this action is brought by Plaintiff individually and on behalf of the subclasses described below (collectively, the "Classes") pursuant to Rule 23, subdivisions (a), (b)(2) and (b)(3) of the *Federal Rules of Civil Procedure*.

32.    Plaintiff seek certification of the following Class and alternative Subclasses:

**<u>Nationwide Class</u>:**

All citizens of the United States who (a) own an in-force Policy (or other policy issued by Defendants with substantially similar terms) and (b) have suffered a Covered Loss as a consequence of the Pandemic or the Closure Orders.

**<u>Pennsylvania Subclass</u>:**

All citizens of Pennsylvania who (a) own an in-force Policy (or other policy issued by Defendants with substantially similar terms) and (b) have suffered a Covered Loss as a consequence of the Pandemic or the Closure Orders.

**<u>New Jersey Subclass</u>:**

All citizens of New Jersey who (a) own an in-force Policy (or other policy issued by Defendants with substantially similar terms) and (b) have suffered a Covered Loss as a consequence of the Pandemic or the Closure Orders.

33.    There are thousands of members of each of the Classes described in the foregoing paragraph. Accordingly, the Classes are so numerous that joinder of all members is impracticable. The identities and addresses of the members of these Classes can be readily ascertained from business records maintained by Defendants.

34.    The claims asserted by Plaintiff are typical of the claims of the Class and Subclass Members.

35.    Plaintiff is willing and prepared to serve the Court and the proposed Classes in a representative capacity. Plaintiff will fairly and adequately protect the interests of the Classes and has no interests that are adverse to, or which materially and irreconcilably conflict with, the interests of the other members of the Classes.

36.     The self-interests of Plaintiff are co-extensive with and not antagonistic to those of absent Class and Subclass members. Plaintiff will undertake to represent and protect the interests of absent Class and Subclass members.

37.     Plaintiff has engaged the services of counsel indicated below who are experienced in complex class litigation and life insurance matters, will adequately prosecute this action, and will assert and protect the rights of and otherwise represent Plaintiff and the members of the putative Classes.

### A.     Rule 23 (b)(2)

38.     This action is appropriate as a class action pursuant to Rule 23 (b)(2).  Plaintiff seeks injunctive relief and corresponding declaratory relief for each of the Classes.  Defendants have in repudiating coverage acted in a manner generally applicable to each member of the Classes.

39. Defendants' unlawful repudiation of coverage, if not enjoined, will subject Plaintiff and members of the Classes to enormous continuing future harm and will cause irreparable injuries to such Policyowners. The adverse financial impact of Defendants' unlawful actions is continuing and, unless permanently enjoined, will continue to irreparably injure Plaintiff and the other members of the Classes.

### B.     Rule 23 (b)(3)

40.     This action is also appropriate as a class action pursuant to Federal Rule of Civil Procedure 23 (b)(3).

41.     Common questions of law and fact concerning the proper interpretation of the standardized Policy provisions predominate over any individualized questions.

42.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, for the following reasons:

a.    the complexity of the issues involved in this action and the expense of litigating the claims, few, if any, Class Members could afford to seek legal redress individually for the wrongs that Defendants has committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

b.    Defendants' liability for coverage under the Policy can be adjudicated at once for Plaintiff and all other members of the Classes;

c.    This action will ensure an orderly and expeditious administration of the Classes' claims and foster economies of time, effort, and expense, and ensure uniformity of decisions and compliance by Defendants with the Policy;

d.    Without a class action, many Class Members would continue to suffer injury, and Defendants' violations of law will continue without redress while they continue to reap and retain the substantial premium proceeds; and

e.    This action does not present any undue difficulties that would impede its management by the Court as a class action.

43.    A class action is superior to other available means for the fair and efficient adjudication of this controversy. The injuries suffered by individual Class Members are, though important to them, relatively small compared to the burden and expense of individual prosecution needed to address Defendants' conduct. Individualized litigation presents a potential for inconsistent or contradictory judgments. In contrast, a class action presents far fewer management difficulties; allows the hearing of claims that might otherwise go unaddressed; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT

44.    Plaintiff repeats, realleges, and incorporates by reference the allegations set forth in Paragraphs 1- 44 as if fully set forth herein.

18

45.    Plaintiff brings this Count individually and on behalf of the other members of the Classes.

46.    The Policy is an enforceable contract between Plaintiff and Defendants.

47.    Plaintiff has performed all of its obligations under the Policy contract, and all conditions precedent to Defendants' performance under the Policy contract have been satisfied.

48.    The Policy provides "Civil Authority" coverage, which promises to pay "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss."

49.    The Closure Orders triggered the Civil Authority provision under Plaintiff's and the other members of Classes under the Policy.

50.    Plaintiffs and the other members of the Classes have complied with all applicable provisions of the Policies and/or those provisions have been waived by Defendants or Defendants are estopped from asserting them, and yet Defendants have repudiated their insurance coverage obligations despite the Policies' terms.

51.    By denying coverage for the Covered Losses incurred by Plaintiff, the Additional Insureds, and the other members of the Classes in connection with the Pandemic and the Closure Orders, Defendants have breached their coverage obligations under the Policies.

52.    As a result of Defendants' breaches of the Policies, Plaintiff, the Additional Insureds, and the other members of the Classes have sustained substantial damages for which Defendants are liable, in an amount to be established at trial.

## COUNT II
## DECLARATORY JUDGMENT

53.    Plaintiff repeats, realleges, and incorporates by reference the allegations set forth in Paragraphs 1-44 as if fully set forth herein.

54.    Plaintiff brings this Count individually on behalf of the Additional Insureds, and on behalf of the other members of the Classes.

55.    Although Plaintiff, the Additional Insureds, and the other members of the Classes have complied with all applicable provisions of the Policies, Defendants have repudiated their insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and have otherwise wrongfully and illegally refused to provide coverage to which Plaintiff and the other members of the Classes are entitled.

56.    In particular, Defendants have denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

57.    An actual case or controversy exists between the parties as to Defendants' obligations under the Policies to reimburse Plaintiffs and the other members of the Classes for their losses incurred in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

58.    Pursuant to 28 U.S.C. § 2201, seek a declaratory judgment from this Court declaring the following:

Plaintiff and the other members of the Classes have incurred losses in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic which are insured losses under their Policies; and

Defendants are obligated to pay Plaintiffs members of the Classes the full amount of the Civil Authority losses incurred and to be incurred in connection with the

covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself, the Additional Insureds, and the other members of the Classes, respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

a.   Entering an order certifying the proposed Classes, as requested herein, designating Plaintiff as the Class Representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

b.   Entering a damages judgment in favor of Plaintiff and the other members of the Classes for Defendants' breach of contract, in an amount to be determined at trial;

c.   Entering declaratory judgments in favor of Plaintiffs and the other members of the Classes;

d.   Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

e.   Ordering Defendants to pay attorneys' fees and costs of suit; and

f.   Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, and the Local Rules of this Court, Plaintiff respectfully demands trial by jury on all issues so triable.

Dated:  May 1, 2020                                    **KAUFMAN COREN & RESS P.C**.

                                                                      BY:
                                                                      /s/_____
                                                                      Deborah R. Gross - 44542
                                                                      Melissa Mazur
                                                                      2001 Market Street, Ste 3900
                                                                      Philadelphia PA  19103
                                                                      (215) 735- 8700
                                                                      dgross@kcr-law.com

**FLEISCHMAN BONNER & ROCCO LLP**

/s_____

Keith M. Fleischman (pro hac vice to be filed)
Joshua D. Glatter (pro hac vice to be files)
81 Main Street, Suite 515
White Plains, NY 10601
Tel:    (914) 278-5100
Fax:    (917) 591-5245
kfleischman@fbrllp.com
jglatter@fbrllp.com