IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BIG RED MANAGEMENT CORP.,** on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>*v.*<br><br>**ZURICH AMERICAN INSURANCE COMPANY,**<br><br>Defendant. | **CIVIL ACTION**<br><br>**NO. 20-2113-KSM** |

## MEMORANDUM

**MARSTON, J.**                                                                                              **January 7, 2022**

Plaintiff Big Red Management Corporation ("Big Red") brings breach of contract and declaratory judgment claims against its insurer, Defendant Zurich American Insurance Company ("Zurich"), seeking coverage for lost business income caused by government closure orders issued in response to the COVID-19 pandemic. (Doc. No. 40.) Presently before the Court is Zurich's motion to dismiss Big Red's claims. (Doc. No. 41.) For the reasons below, Zurich's motion is granted.

**I.      BACKGROUND**

Big Red manages over a dozen restaurants in and around Philadelphia. (Doc. No. 41-2 at 12.) From July 2019 through July 2020, its restaurants were covered by a Property Portfolio Protection, General Liability Coverage and Business Automobile Policy ("the Policy") issued by Zurich. (Doc. No. 40 ¶ 2.)

A.     *The Policy*

The Policy is an "all-risk" policy, which means that it covers loss caused by any "fortuitous cause or event" that is not specifically excluded from coverage. (Doc. No. 41-2 at 59.) The Policy enumerates eighteen "Excluded Causes of Loss," including "microorganisms" (the "Microorganism Exclusion"):

> We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of "microorganisms", unless resulting from fire or lightning. Such loss or damage is excluded regardless of any other cause or event, including a "mistake", "malfunction", or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered. . . .

(*Id.* at 79.) The Policy defines "Microorganism" as including "any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, fungus, wet or dry rot, *virus*, algae, or bacteria, or any by-product." (*Id.* at 65 (emphasis added).) Notwithstanding the Microorganism Exclusion, the Policy includes additional coverage that will pay for physical loss and the cost of repair "when 'microorganisms' *are the result of* a 'covered cause of loss.'" (*Id.* at 91 (emphasis added).)

The Policy also includes additional coverage for the loss of "business income" and "extra expenses" caused by "Civil Authority" (the "Civil Authority Coverage"):

> We will pay for the actual loss of "business income" you sustain for up to the number of days shown on the Declarations for Civil Authority resulting from the necessary "suspension", or delay in the start, of your "operations" if the "suspension" or delay is caused by order of civil authority that prohibits access to the "premises" or "reported unscheduled premises". That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the "premises" or "reported unscheduled premises" which sustains a "business income" loss. The loss or damage must be directly caused by a "covered cause of loss."

(*Id.* at 128; *see also id.* at 137 (providing additional coverage for "extra expenses" incurred due to acts of Civil Authority subject to the same conditions as the loss of "business income" additional coverage).)

### B.     *The Closure Orders*

On March 6, 2020, Governor Tom Wolf issued a "Proclamation of Disaster Emergency" recognizing the threat of "imminent disaster and emergency" the COVID-19 pandemic posed to the Commonwealth of Pennsylvania.[1]  *See* Pa. Office of the Governor, *Proclamation of Disaster Emergency* (Mar. 6, 2020), https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf.  Despite recognizing the potential for emergency, the Governor did not issue any closure orders at that time.  (Doc. No. 40 ¶ 13.)  The Montgomery County Commissioners issued a similar "Declaration of Disaster Emergency" on March 8, 2020, but, like the Governor, did not issue any closure orders.  (*Id.* ¶ 14.)

On March 14, 2020, the Pennsylvania Department of Community and Economic Development issued guidance advising non-essential businesses in Bucks, Chester, Delaware, and Montgomery counties to close and advising restaurants to remain open for takeout and delivery only.  *See* Pa. Dep't of Cmty. & Econ. Dev., *Wolf Administration Issues Guidance to Non-essential Businesses as Part of COVID-19 Mitigation Efforts* (Mar. 14, 2020), https://dced.pa.gov/newsroom/wolf-administration-issues-guidance-to-non-essential-businesses-as-part-of-covid-19-mitigation-efforts/.  The City of Philadelphia issued the first closure order on March 16, 2020; however, this order allowed "[f]ood establishments" to remain open for "online

---

[1] The Court will take judicial notice of the state and local declarations and closure orders.  On a motion to dismiss, courts may take judicial notice of "matters of public record," such as the declarations and orders.  *See Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 258 (E.D. Pa. 2020); *United States ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 139–40 (E.D. Pa. 2012).

and phone orders for delivery and pick-up." *See* City of Phila., *City Announces New Restrictions on Business Activity in Philadelphia* (Mar. 16, 2020), https://www.phila.gov/2020-03-16-city-announces-new-restrictions-on-business-activity-in-philadelphia/. On March 19, 2020, the Commonwealth followed suit and issued an order requiring all non-life sustaining businesses to close (together with the City of Philadelphia's March 16, 2020 order, the "Closure Orders"). *See* Pa. Office of the Governor, *Order of the Governor of the Commonwealth of Pennsylvania Regarding the Closure of All Businesses that Are Not Life Sustaining* (Mar. 19, 2020), https://www.governor.pa.gov/wp-content/uploads/2020/03/20200319-TWW-COVID-19-business-closure-order.pdf. As with the City of Philadelphia's order, the Commonwealth's order allowed "[b]usinesses that offer carry-out, delivery, and drive-through food and beverage service [to] continue." *Id.*

### C. *Big Red's Losses*

Big Red claims that, "[a]s a consequence of the [COVID-19] Pandemic (including specifically damage to property caused by the coronavirus), and the various [Closure] Orders issued in the Commonwealth, Plaintiff and the Additional Insureds have suffered Covered Losses under the Policy." (Doc. No. 40 ¶ 25.) Big Red submitted a claim under the policy for the business income and extra expenses it lost while the Closure Orders were in effect. (*Id.* ¶ 30.) Zurich denied its claim on July 28, 2020 (*id.* ¶ 31), and Big Red filed suit (Doc. No. 1).

## II. ANALYSIS

### A. *Legal Standard*

#### 1. **Motion to Dismiss**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quotation marks omitted). In reviewing a motion to

4

dismiss, the court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from those allegations. *Id.* However, the court is not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (cleaned up). Similarly, the Court "may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### 2. Interpretation of Insurance Contract

Under Pennsylvania law, the interpretation of a contract of insurance is a matter of law for the courts to decide.'" *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 391 (3d Cir. 2012) (quoting *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235 (1994)); *see also Pa. Env't Def. Found. v. Pennsylvania*, 255 A.3d 289, 304 (Pa. 2021). Courts applying Pennsylvania law are required to give effect to a contract's clear and unambiguous language. *401 Fourth St., Inc. v. Invs. Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005); *see also Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 426 (E.D. Pa. 2020). A contract's terms "are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Constr. Co. v.*

*Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999); *see also Atain Ins. Co. v. E. Coast Bus. Fire, Inc.*, Civil Action No. 17-2545, 2018 WL 637579, at *2 (E.D. Pa. Jan. 31, 2018) ("Contract language is ambiguous if it is reasonably capable of more than one meaning."). However, courts must not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity," and must give effect to a contract's clear and unambiguous terms. *Madison Constr. Co.*, 735 A.2d at 106.

### B. Discussion

Zurich argues that Big Red cannot state a claim for breach of contract and is not entitled to a declaratory judgment for four reasons: (1) the Civil Authority Coverage does not apply to losses caused by "microorganisms"; (2) the Civil Authority Coverage does not apply because Big Red has not alleged that there has been any physical loss of or damage to its properties; (3) the Civil Authority Coverage does not apply because the Closure Orders were issued in an attempt to mitigate COVID-19, not in response to a direct physical loss of or damage to property within one mile from the premises of any of Big Red's restaurants; and (4) the Civil Authority Coverage does not apply because the Closure Orders did not "prohibit access" to Big Red's restaurants. (Doc. No. 41.)

Big Red responds that the Civil Authority Coverage applies to its losses because (1) the Microorganism Exclusion does not apply to the Civil Authority Coverage; (2) Big Red incurred physical loss of or damage to its restaurants from the threat of COVID-19; (3) the Closure Orders were issued in response to the "direct physical loss or damage" caused by COVID-19; and (4) the Closure Orders "prohibited access" to their restaurants. (Doc. No. 42.) Big Red also argues that its "reasonable expectations" that its losses were covered supersede the plain language of the Policy. (*Id.* at 30–31.)

6

The Court considers the parties' arguments in turn.

### 1.     The Microorganism Exclusion Applies

Zurich argues that the Civil Authority Coverage is barred by the Microorganism Exclusion.  (Doc. No. 41 at 18.)  Big Red puts forth several arguments as to why the Microorganism Exclusion does not apply.  (Doc. No. 42 at 13–14.)

First, Big Red argues that the Policy includes "explicit provisions *granting coverage* for losses from microorganisms."  (*Id.* at 13.)  Big Red is correct that the Policy includes $25,000 of additional standalone coverage related to microorganisms (Doc. No. 41-2 at 91), but it mischaracterizes the scope of that coverage.  This standalone additional coverage provides that Zurich "will pay . . . when 'microorganisms' *are the result of* a 'covered cause of loss' . . . ."  (*Id.* (emphasis added).)  Big Red does not allege that COVID-19 was *the result of* some other covered cause of loss; rather, it alleges that COVID-19 *caused* its business losses.  Because COVID-19, the relevant microorganism, was not the result of a covered cause of loss, the additional standalone coverage does not apply.

Next, Big Red argues that the Microorganism Exclusion is ambiguous and must be construed in favor of coverage because it does not specifically exclude Big Red's alleged cause of loss.  (Doc. No. 42 at 16–17.)  Big Red argues that its cause of loss was not COVID-19 itself but rather the *threat* of COVID-19 and the Microorganism Exclusion only excludes "viruses," not the threat of viruses.  (*Id.*)  But nowhere in the Amended Complaint does Big Red allege that the threat of COVID-19 caused its losses.  (*See generally* Doc. No. 40.)  Instead, Big Red alleges that the "Pandemic . . . and the various Orders issued in the Commonwealth" caused its losses.  (*Id.* ¶ 25.)  Even if Big Red had alleged that its losses were caused by the threat of COVID-19, the Microorganism Exclusion is not ambiguous.  The Microorganism Exclusion excludes losses "directly *or indirectly* caused by . . . microorganisms [including viruses]."  (Doc. No. 41-2 at 79.)

7

The "threat of COVID-19" unquestionably stems from the fact of the virus (without the COVID-19 virus there would be no threat of a COVID-19 pandemic), so the "threat of COVID-19" falls squarely within the Microorganism Exclusion, and the Microorganism Exclusion is not ambiguous. *See Certain Underwriters at Lloyd's of London Subscribing to Policy No. SMP3791 v. Creagh*, 563 F. App'x 209, 211 (3d Cir. 2014) (affirming the district court's conclusion that a substantially similar microorganism exclusion was not ambiguous and barred coverage); *TAQ Willow Grove, LLC v. Twin City Fire Ins.*, 513 F. Supp. 3d 536, 547 (E.D. Pa. 2021) (dismissing the plaintiff's claim for lost business income during COVID-19 closures because a virus "directly or indirectly" caused the plaintiff's losses and the policy's virus exclusion was "unambiguous in the context of losses caused by COVID-19"); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, 499 F. Supp. 3d 95, 100 (E.D. Pa. 2020) (dismissing the plaintiff's claim for business revenue lost during COVID-19 closures because the plaintiff's alleged loss was caused directly or indirectly by a virus, COVID-19).

Finally, Big Red argues that even if the Microorganism Exclusion applies, the Closure Orders, not COVID-19, caused Big Red's losses. (Doc. No. 42 at 18–19.) But the Commonwealth and the City of Philadelphia issued the Closure Orders *to stop the spread of the virus*, so the Closure Orders fall under the Microorganism Exclusion, and Big Red's losses are not covered under the Policy.[2] *See Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se.*, 516 F. Supp. 3d 450, 460 (E.D. Pa. 2021) ("[T]he plain text of the provision bars coverage for

---

[2] The Microorganism Exclusion includes an anti-concurrent causation clause, which provides that "such loss or damage is excluded regardless of any other cause or event . . . that contributes concurrently or in any sequence to the loss." (Doc. No. 41-2 at 79.) Big Red argues that this provision cannot be enforced as a matter of public policy. (Doc. No. 42 at 18.) However, the Court need not consider this argument. The Closure Orders are not a separate cause of Big Red's losses because they were "indirectly caused" by COVID-19. *See Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 549, 565 (E.D. Pa. 2021) ("Even if the virus was not the direct cause of Plaintiffs' losses, it was at least an indirect cause, which is sufficient to bar coverage under the virus exclusion clause.").

loss or damage caused 'indirectly' by any virus. . . . [T]he March 2020 Closure Orders were issued with the plan to stem the spread of COVID-19."); *Hums. & Res., LLC v. Firstline Nat'l Ins. Co.*, 512 F. Supp. 3d 588, 601 (E.D. Pa. 2021) (concluding that the plaintiff's claims for business income lost during COVID-19 closures were not covered because the causes of loss fell under the virus exclusion even though the plaintiff's purported causes of loss were the virus *and* the entry of the closure orders); *TAQ Willow Grove*, 513 F. Supp. 3d at 547 ("TAQ next argues the virus exclusion applies only to exclude damages caused by a virus. The exclusion does not apply to exclude the damages TAQ alleges it suffered as a result of the Civil Authority orders. This effort to circumvent the virus exclusion fails.").

Accordingly, the Microorganism Exclusion applies and bars coverage for Big Red's claimed losses.

### 2. COVID-19 Did Not Cause Direct Physical Loss of or Damage to Property

In the alternative, the Court finds that Big Red's losses are not covered by the Policy because COVID-19 did not cause "direct physical loss of or damage to property." (*See* Doc. No. 41 at 22.)

Big Red concedes that the Policy only offers coverage where "there is a physical loss of or damage to property" (Doc. No. 42 at 19) but argues that the "imminent threat" of COVID-19 at its restaurants caused such loss and/or damage (*id.* at 19–27). Notably, Big Red does not argue that COVID-19 was ever present at any of its restaurants. (*See id.*) Zurich responds that the "mere 'threat' of virus" does not—and cannot—constitute direct physical loss of or damage to property. (Doc. No. 43 at 17.)

The Court agrees with Zurich. "Direct physical loss" occurs when the insured structure "has been rendered uninhabitable and unusable"; however, "when the structure continues to

function, there is no physical loss that would be eligible for coverage." *Lansdale 329 Prop., LLC v. Hartford Underwriters Ins. Co.*, 537 F. Supp. 3d 780, 781 (E.D. Pa. 2021) (quoting *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002)). Likewise, "direct physical damage" occurs when there is "a distinct, demonstrable, physical alteration of the property." *Id.* "[F]or Plaintiffs to assert an economic loss resulting from their inability to operate their premises as intended within the coverage of the Policy's 'physical loss' provision, the loss and the bar to operation from which it results must bear a causal relationship to some *physical condition* of or on the premises and that the premises must be uninhabitable and unusable, or nearly as such." *Hums. & Res.*, 512 F. Supp. 3d at 599–600.

Courts presented with this issue in the context of COVID-19 insurance cases have uniformly held that neither COVID-19 nor the threat thereof causes physical loss of or damage to property. *See, e.g.*, *Spring House Tavern, Inc. v. Am. Fire & Cas. Co.*, --- F. Supp. 3d ---, CIVIL ACTION NO. 20-2872, 2021 WL 2473939, at *4 (E.D. Pa. June 16, 2021); *Lansdale 329 Prop.*, 537 F. Supp. 3d at 781; *Shantzer v. Travelers Cas. Ins. Co. of Am.*, 531 F. Supp. 3d 920, 925 (E.D. Pa. 2021); *Tria WS LLC v. Am. Auto. Ins. Co.*, 530 F. Supp. 3d 533, 540–41 (E.D. Pa. 2021); *Frank Van's Auto Tag*, 516 F. Supp. 3d at 457; *Ultimate Hearing Sols. II*, 513 F. Supp. 3d at 558; *Indep. Rest. Grp. v. Certain Underwriters at Lloyd's of London*, 513 F. Supp. 3d 525, 532–33 (E.D. Pa. 2021); *ATCM Optical, Inc. v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 513, 521 (E.D. Pa. 2021); *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 3d 616, 624 (E.D. Pa. 2020); *Brian Handel D.M.D.*, 499 F. Supp. 3d at 99–100.

Here, Big Red has not sufficiently alleged facts supporting its allegation that the threat of COVID-19 actually caused physical loss of and/or damage to its properties. (Doc. No. 40 ¶¶ 28–29.) If the *presence of* COVID-19 does not cause physical loss of or damage to property, the

10

*threat of* COVID-19 certainly does not cause such loss or damage. Accordingly, the Civil Authority Coverage does not apply, and Big Red's claims fail.

### 3. The Closure Orders Were Not Issued in Response to Direct Physical Loss of or Damage to Property

In the alternative, the Civil Authority Coverage does not apply because the Commonwealth and the City of Philadelphia issued the Closure Orders in response to the COVID-19 virus, *not* in response to physical loss or damage to property. (*See* Doc. No. 41 at 22.) Big Red contends that the Closure Orders were issued in response to the physical loss of or damage to property *caused by* COVID-19. (Doc. No. 42 at 20.)

Although the Closure Orders were issued to mitigate the spread of COVID-19, *see Friends of Danny Devito v. Wolf*, 227 A.3d 872, 889–90 (Pa. 2020), COVID-19 does not cause physical loss of or damage to property, *see supra* Section II.B.2. "The instigation of the [closure] orders prohibiting access *must be a physical condition* in a nearby property. Loss of utility is not structural or physical. Nor is the mere possibility of the presence of the virus in nearby properties or the public's anxiety about indoor spaces." *Paul Glat MD, P.C. v. Nationwide Mut. Ins. Co.*, 531 F. Supp. 3d 908, 914–15 (E.D. Pa. 2021); *see also, e.g.*, *Spring House Tavern*, 2021 WL 2473939, at *5; *Tria WS LLC*, 530 F. Supp. 3d at 540–41; *Frank Van's Auto Tag*, 516 F. Supp. 3d at 457; *Moody v. Hartford Fin. Grp., Inc.*, 513 F. Supp. 3d 496, 509 (E.D. Pa. 2021); *Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co.*, 503 F. Supp. 3d 251, 257 (E.D. Pa. 2020).

Because the Closure Orders were not issued in "response to direct physical loss of or damage to property," the Civil Authority Coverage does not apply, and Big Red's claims fail.

### 4. The Closure Orders Did Not Prohibit Access to Big Red's Restaurants

Finally, the Closure Orders do not fall within the Civil Authority Coverage because Big Red was allowed to continue operations under the Closure Orders by offering takeout and delivery. (*See* Doc. No. 41 at 27.) The Policy only provides Civil Authority Coverage where the governmental orders "prohibit[ed] access" to the insured property. (*See* Doc. No. 41-2 at 128, 137.) Big Red argues that the Closure Orders prohibited access to its restaurants because they barred in-person dining and it has not alleged that it offered takeout service. (Doc. No. 42 at 29.)

Courts in this District disagree as to whether the Closure Orders "prohibited access" to restaurants such that the Civil Authority Coverage should apply. *Compare Newchops Rest. Comcast*, 507 F. Supp. 3d at 623 n.23 ("The restaurants were essentially closed to the public, prohibiting the insureds from conducting their usual business. Because it is unclear whether access need be total or substantially prohibited, the policy language is ambiguous. Accordingly, because we must construe the ambiguity in favor of the insureds, we conclude that any restriction of access, total or partial, to the properties satisfies the prohibited access element of the civil authority provision.") *with 4431, Inc. v. Cincinnati Ins. Cos.*, 504 F. Supp. 3d 368, 386 (E.D. Pa. 2020) ("[I]t is clear that Plaintiffs' ability to continue limited takeout and delivery operations at the premises precludes coverage under the Civil Authority provision: a prohibition on access to the premises, which is a prerequisite to coverage, is not present.").

Because Big Red has failed to satisfy other prerequisites to Civil Authority Coverage, *see supra* Section II.B.1–3, we need not rule on this argument.

### 5. Big Red's Reasonable Expectations Do Not Supersede the Plain Language of the Policy

Last, in an effort to circumvent the plain language of the Policy, Big Red argues that, even if it is not entitled to coverage under the *terms* of the Policy, it reasonably expected that

12

"the[] losses caused by the threatened presence of a virus or by a related closure order would be covered," and their reasonable expectations supersede the terms of the Policy. (Doc. No. 42 at 32.) Zurich responds that Big Red has not—and cannot—identify any factual support for its "reasonable expectations" and that the Court should not rewrite the terms of an unambiguous contract. (Doc. No. 23.)

Pennsylvania courts have adopted the "reasonable expectations doctrine." *See Downey v. First Indem. Ins.*, 214 F. Supp. 3d 414, 423 (E.D. Pa. 2016). The Third Circuit has explained the doctrine:

> Pennsylvania case law . . . dictates that the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured. In most cases, *the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations*. Courts, however, must examine the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured. As a result, even the most clearly written exclusion will not bind the insured *where the insurer or its agent has created in the insured a reasonable expectation of coverage.* However, this aspect of the doctrine is applied "*in very limited circumstances*" to protect non-commercial insureds from policy terms not readily apparent and from insurer deception. Absent sufficient justification, . . . an insured may not complain that his or her reasonable expectations were frustrated by policy limitations that are clear and unambiguous.

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005) (emphases added).

As the Third Circuit made clear in *Liberty Mutual*, the doctrine is applied only "in very limited circumstances," such as where an insurer unilaterally changes the terms of the contract or engages in other underhanded behavior at the expense of the insured. *See, e.g.*, *UPMC Health Sys. v. Metro Life Ins. Co.*, 391 F.3d 497, 502–03 (3d Cir. 2004).

Here, the plain language of the Policy bars coverage. Big Red has not alleged that it reasonably expected the Policy to cover these losses, nor has it alleged that Zurich or its agents "created in [Big Red] a reasonable expectation of coverage," or unilaterally changed the terms of

the policy, so the reasonable expectations doctrine will not save its claims. *See Lansdale 329 Prop.*, 537 F. Supp. 3d at 780 (holding that the reasonable expectations doctrine did not apply where "Plaintiffs have offered no basis in fact for their 'reasonable expectations' argument other than their general argument . . . that they believed their policies covered 'all risks'"); *Moody*, 513 F. Supp. 3d at 507–08 ("But Moody Jones has not pleaded facts that lead the Court to conclude that Twin City or its agent created in the insured a reasonable expectation of coverage that is not supported by the terms of the policy. . . . While Moody Jones alleges that it *sought* coverage for business interruption losses, it points to no facts that it actually applied and paid for a wholly different kind of policy than what it received."). *Contra Hums. & Res.*, 512 F. Supp. 3d at 588 (holding that the reasonable expectations doctrine may apply where the plaintiff alleges that it "purchased the Policy with an expectation that it was purchasing a policy that would provide coverage in the event of business interruption and extended expenses, such as that suffered by Plaintiff as a result of COVID-19").

Because the reasonable expectations doctrine is inapplicable, Big Red's claims fail.

### 6. Big Red's Claims Are Dismissed with Prejudice

Big Red specifically requested that any dismissal "should be without prejudice so that Plaintiff may move for leave to amend to address any issues that the Court raises in its ruling." (Doc. No. 42 at 33.) "Leave to amend should be freely granted," *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 429 (E.D. Pa. 2020) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)); however, "[l]eave to amend may be denied . . . if amendment would be futile," *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Here, the Policy is clear—Big Red's COVID-19 related losses are not covered, so amendment would be futile, and the Court will dismiss Big Red's claims with prejudice. *See, e.g.*, *Boscov's Dep't Store v. Am. Guarantee & Liab. Ins. Co.*, -- F. Supp. 3d --, Civil No. 5:20-cv-03672-JMG, 2021 WL 2681591, at *10 (E.D. Pa. June, 30, 2021) (dismissing

14

COVID-19 insurance case with prejudice); *Moody*, 513 F. Supp. 3d at 513 (same); *Wilson*, 492 F. Supp. 3d at 429 (same).

## III. CONCLUSION

For the reasons above, Zurich's motion to dismiss is granted.  An appropriate order follows.